UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| SEMCRUDE, L.P., *et al.*, | . | Case No. 08-11525(BLS) |
| | . | (Jointly Administered) |
| | . | |
| | . | April 11, 2013 |
| | . | 9:00 a.m. |
| Debtors. | . | (Telephonic) |
| | . | |

...................................................

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| SEMGROUP HOLDINGS, L.P., | . | Case No. 08-12504(BLS) |
| | . | |
| Debtor. | . | |
| | . | |

...................................................

| | | |
|---|---|---|
| Plains Marketing, L.P. *et al.* | . | |
| v. Bank of America, N.A. *et al.*. | . | Adv.Proc.No. 09-51003(BLS) |
| | . | |
| SemMaterials, L.P. v. Thomas | . | Adv.Proc.No. 11-53392(BLS) |
| H. Gannon & Sons, Inc. | . | |
| | . | |
| SemMaterials, L.P. v. | . | Adv.Proc.No. 11-53394(BLS) |
| Ferraiolo Corp. | . | |
| | . | |
| Bettina M. Whyte, as the | . | |
| Trustee, on behalf of the | . | |
| SemGroup Litigation Trust, | . | |
| | . | |
| Plaintiff, | . | |
| | . | |
| v. | . | Adv.Proc.No. 10-50840(BLS) |
| | . | |
| C/R Energy Coinvestment II, | . | |
| L.P., C/R SemGroup Investment | . | |
| Partnership, L.P., Ritchie SG | . | |
| Holdings L.L.C., SGLP Holding, | . | |
| LTD., SGLP US Holding, L.L.C. | . | |
| and Doe Defendants, 1-100, | . | |
| | . | |
| Defendants. | . | |

Bettina M. Whyte, as the           .
Trustee, on behalf of the          .
SemGroup Litigation Trust,         .
                                   .
            Plaintiff,             .
                                   .
      v.                           .    Adv.Proc.No. 10-51808(BLS)
                                   .
Cottonwood Partnership, LLP,       .
Rosene Family, Satco               .
Investments, L.L.C., and Doe       .
Defendants, 1-100,                 .
                                   .
            Defendants.            .
.............................................................


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For Plains
Marketing, LP:              Kathleen P. Makowski, Esq.
                            Pachulski, Stang, Ziehl & Jones, LLP

                            Ariadne S. Montare, Esq.
                            Ahmad, Zavitsanos, Anaipakos, Alavi
                            & Mensing, P.C.

For the Litigation
Trustee:                    Alan M. Root, Esq.
                            Blank Rome, LLP

                            R. Brian Timmons, Esq.
                            Eric Winston, Esq.
                            Brian W. Collins, Esq.
                            Matthew R. Scheck, Esq.
                            Quinn, Emanuel, Urquhart
                            & Sullivan, LLP

For Cottonwood
Partnership:                James W. Rusher, Esq.
                            Albright, Rusher & Hardcastle

```
For the Ritchie
Defendants:              Patrick J. Reilley, Esq.
                         Cole, Schotz, Meisel, Forman
                         & Leonard, P.A.

                         Thomas K. Cauley, Esq.
                         Brian A. McAleenan, Esq.
                         Elizabeth Maxeiner, Esq.
                         Sidley Austin, LLP

Audio Operator:          Dana Moore

Transcriptionist:        Jennifer Ryan Enslen
                         43 Bay Boulevard
                         Newark, De 19702
                         (302)836-1905
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE COURT: Good morning, counsel.  This is Judge

2    Shannon.  I understand from the operator that all necessary

3    parties are on the call.  Is counsel for the, for Ms. Whyte

4    as the Trustee on the call?

5          MR. TIMMONS: Yes, Your Honor.  This is Brian

6    Timmons on behalf of Ms. Whyte, Quinn Emmanuel.  With me on

7    the phone is Eric Winston - -

8          THE COURT: Very good.

9          MR. TIMMONS:  - - Matt Scheck and Brian Collins.

10          THE COURT: Okay.  Thanks.  Good morning, gentlemen.

11    And I assume counsel for the defendants is likewise on the

12    phone.

13          MR. CAULEY: Your Honor, Tom Cauley and Brian

14    McAleenan for the Ritchie defendants.

15          THE COURT: Okay.

16          MR. RUSHER: And Jim Rusher for Cottonwood is one

17    the phone.

18          THE COURT: Very good.  Thank you, gentlemen.  And I

19    do appreciate you making time this morning.  The, with all

20    parties on the line, I note that the matter that's before the

21    Court is the defendants' motion for partial summary judgment

22    as to plaintiffs' allegation that the defendant, that the

23    Debtor had unreasonably small capital at the time of the 2007

24    distribution and attendant to the motion for partial summary

25    judgment are motions *in limine* to preclude certain testimony

1   by the plaintiffs' lay and expert witnesses that the

2   plaintiffs would offer in support of their unreasonably small

3   capital allegation.  This matter has been extensively briefed

4   and we did hold argument yesterday on these motions.  Given

5   the complexity and significance of the issues that were

6   presented, I would note that I would certainly prefer to rule

7   upon these motions through a formal, written, published

8   opinion.  However, given that the parties have, are headed to

9   trial here in just a few weeks and in light of the express

10  purpose of the hearing on the motion for partial summary

11  judgment was in hopes of streamlining the matters that are to

12  be considered for trial, I will provide you today with my

13  oral ruling.  And for the reasons that I will lay out, I will

14  grant the motion for partial summary judgment.  In connection

15  therewith, I will grant the motions *in limine* to the extent

16  that they relate to the presentation of lay or expert

17  testimony in support of the plaintiffs' unreasonably small

18  capital allegations.  The parties are familiar with the

19  background and so I'm not going to go through that in depth.

20  This litigation concerns, in the aggregate, two distributions

21  that were made by the Debtors to the defendants prior to the

22  Debtors' bankruptcy filings.  One distribution occurred in

23  2007 and one distribution in 2008.  I am aware that there

24  were multiple parties receiving monies from the Debtors in

25  connection with both of these distributions, and that there

1    were, therefore, multiple payments, but I think for ease of

2    discussion I'm going to refer to them as single distributions

3    in 2007 and in 2008.  The plaintiffs' theory of recovery on

4    the 2007 distribution is that the Debtor had unreasonably

5    small capital at or after the 2007 distribution.  The

6    undisputed record, though, reflects that on account of

7    substantial availability under a large bank line of credit,

8    SemGroup had more than adequate capital to operate its

9    business at and after the 2007 distribution.  It is the

10   plaintiffs' position that the Court should discount or

11   disregard the fact of sufficient capitalization on the theory

12   that if the lenders had known of SemGroup's speculative

13   trading, the banks would have pulled or terminated the line

14   of credit, and then SemGroup would indeed have been without

15   sufficient capital to run its business.  First, governing

16   case law in the 3rd Circuit starting at least from the Moody's

17   decision in 1992, is that all available sources of capital,

18   including bank lines, must be considered in determining

19   whether an entity is adequately capitalized.  And again, it

20   is not seriously disputed that SemGroup was in fact

21   adequately capitalized and had sufficient liquidity or

22   availability to operate in 2007 at and after the

23   distribution.  Case law also teaches that as a general

24   proposition, hindsight should not be used to answer the

25   question of unreasonably small capital.  Plaintiffs asked

1   that the Court apply the Current Circumstances Doctrine to

2   allow the Court to subsequently, to consider subsequently

3   discovered information or circumstances.  In this case, the

4   circumstances would be SemGroup's speculative trading and,

5   ultimately, what the consequences of that were, to establish

6   that SemGroup was actually undercapitalized and it's apparent

7   liquidity was a mirage produced by its improper conduct.  The

8   parties have directed the Court to cases developing the

9   Current Circumstances Doctrine and while I acknowledge and

10  support that doctrine, I find it does not apply here.  That

11  doctrine has particular application in the context of fraud

12  or of "cooked books", where the appearance of solvency is

13  actually a sham or a mirage.  And when we talk about this

14  analysis, I think the decision that both parties extensively

15  briefed and argued yesterday starts with the Coated Sales

16  case, and I think that's a good example of the Current

17  Circumstances Doctrine.  And a wholly appropriate one as

18  well.  The parties are familiar with the facts of the case,

19  so I won't go through it in detail, but the Debtors' apparent

20  solvency was predicated upon false accounts receivable, non-

21  existent or invented inventory, and illegal transfers.  And

22  in that situation, frankly, the Court found that the record

23  permitted a confident picture of the debtor's actual and

24  financial, of the actual financial condition.  Other cases

25  that apply Current Circumstances Doctrine are similarly

1   predicated upon a record of fraudulent conduct that reveals

2   that by any fair measure a debtor's financial condition is

3   clearly worse than what's pictured or known at the time.  But

4   these are not our facts.  Here the availability of the bank

5   facility provided the Debtor with actual liquidity sufficient

6   to operate its business going forward.  There is no material

7   allegation of fraud or criminal conduct by the Debtor, but

8   there is an allegation of trading activities that were beyond

9   what was permitted under the terms of the bank facility.

10  This is a far cry from what was presented in Coated Sales and

11  the other Current Circumstances Doctrine cases and I think

12  that Courts, frankly, ought to be chary of employing

13  hindsight, or employing that doctrine broadly.  These cases

14  in Bankruptcy Court always present a context of a failed

15  business, and there is a temptation, I think, to use

16  hindsight to establish whether a debtor was adequately

17  capitalized, and I think that's a temptation to be avoided,

18  because it would improperly expand fraudulent conveyance law

19  far beyond its proper borders.  The Court's reasoning, I

20  think, in the Edgewater case underscores these concerns.  In

21  that case, the debtor was committing Medicare fraud and was

22  thereby collecting, actually collecting and holding inflated

23  or excessive payments.  But in that case, the Court refused

24  to apply the Current Circumstances Doctrine on the ground

25  that to do so would require the Court to perform an

1   inherently speculative exercise to disregard actual dollars

2   that were in the debtors' bank account and speculate on what

3   would have been the case if the Medicare fraud had been

4   discovered.  And the allegation by the plaintiff was that

5   there would have been a shutdown, there would have been a

6   recoupment, there would have been penalties and criminal

7   proceedings.  And the Edgewater case, I think, presents more

8   egregious facts than those presented here.  And I think it's

9   important to note that.  I'm not certain that I would have

10  directly followed the Edgewater case given that there were

11  credible, it was credibly demonstrated that there was actual

12  fraud, and frankly criminal conduct going on.  But

13  nevertheless, this case does not present even the Edgewater

14  circumstances.  The Court's concern, I think, in Edgewater

15  is, I think, well presented.  Here, to accept the plaintiffs'

16  theory, the Court would have had to disregard the actual

17  facts of adequate capitalization for SemGroup and imagine

18  what would have happened had Sem's trading practices become

19  known to the lenders.  And I note that the parties dispute

20  whether the speculative trading was disclosed.  Defendants

21  have offered substantial support that the trading in fact was

22  disclosed either in the Debtors' financial reporting, in its

23  footnotes or otherwise, including the affiliate transactions

24  that relate to Westback, and the plaintiffs similarly contend

25  that it was not sufficiently or adequately disclosed or that

1    to the extent it was disclosed that those disclosures were

2    countervailed by Sem's representations that it was, in fact,

3    not engaging in speculative trading.  Regardless of this

4    admittedly live dispute, there is no significant allegation

5    of fraud or "cooking the books" by SemGroup, and I am

6    exceedingly reluctant to engage in the speculative exercise

7    that the plaintiffs propose.  Accordingly I do find that the

8    uncontroverted record reflects that the Debtor had adequate

9    capitalization and liquidity at and after the 2007

10   distribution and that the defendants' motion for partial

11   summary judgment on that issue will be granted.  I would

12   touch briefly on the motions *in limine* and I would say that

13   consideration of those motions *in limine* only bolster my

14   confidence or my position in ruling on the partial summary

15   judgment motion.  Mr. Valbona, Mr. Reese, and Mr. Lehman are

16   offering lay and expert testimony respectively regarding what

17   the banks would have done if they'd been aware in 2007 of the

18   speculative trading.  And it's their collective judgment that

19   the banks, consisting of over a hundred financial

20   institutions, would have immediately pulled and terminated

21   the credit facility, essentially killing or stopping the

22   Debtors' business in 2007.  Thereby revealing that had the

23   facts been known, the Debtor would not have had access to the

24   line of credit, and therefore would have had insufficient

25   capital to run the business.  I find that this is, I

1    understand the theory and I certainly respect the argument

2    and the way that it is articulated, but I find that it is

3    simply too speculative.  Fist, I observe that I am dubious,

4    frankly, of the proposition that the line would have simply

5    been pulled or that that is even the most likely result.

6    There is a range of options, a broad range of options from

7    pulling the line, to restructuring it, to requiring a sale of

8    assets to pay down a portion of the line, to imposing

9    restrictions on the Debtors' trading activity, to simply

10   doing nothing.  All of which can be plausibly explained or

11   anticipated to have occurred in 2007.  And because neither I

12   nor anyone, I think, can demonstrate which of these options

13   would have occurred or would have been, would have been

14   likely to have occurred, I defer to the wisdom of the case

15   law that limits the use of hindsight and discourages the

16   consideration of later information absent circumstances that

17   are not present here.  At bottom, having granted the motion

18   for partial summary judgment, I will grant the motions *in*

19   *limine* to preclude introduction of evidence that would have

20   been offered in support of plaintiffs' allegation of

21   unreasonably small capital as it relates to the 2007

22   distribution.  I will ask that the parties confer and submit

23   orders under certification consistent with my ruling this

24   morning.  Are there any questions.

25           MR. TIMMONS: No, Your Honor.  This is Brian Timmons

1    on behalf of the plaintiffs, we have no questions.

2         MR. CAULEY: No questions, here.

3         THE COURT: Okay.  I have just a few minutes, and I

4    think we had reserved some time if we could.  Are there

5    issues that we need to discuss in anticipation of a trial

6    next week?  It's not next week, it's a couple of weeks.  And

7    if not, or if you want to get me on the phone at a later

8    point, we can certainly do that.  But I think we had left it

9    open that we had some housekeeping we might try to get to

10   that we didn't get to yesterday.  Mr. Timmons, I think you

11   and I spoke about this yesterday.

12        MR. TIMMONS: Yes, Your Honor.  This is Brian

13   Timmons again.  There are a number of items.  I'll try to run

14   through them quickly if I can.  I'm pleased to say that we

15   have reached agreement with counsel for the defendants on

16   protocol for many of these items.  As Your Honor knows, you

17   had indicated that you'd like to have direct testimony by

18   declaration and we have agreed that we would do that.  I

19   think, if it's okay with Your Honor, what we plan to do with

20   respect to the direct testimony of the experts, which will

21   constitute most of the testimony in the case, is to provide a

22   short summary declaration and attach their expert reports as

23   their direct testimony.  And then we also contemplated

24   allowing the experts to spend five to ten minutes on the

25   stand introducing themselves and summarizing their opinions

1  before they are turned over to be crossed.  Does that

2  procedure sound okay to Your Honor?

3       THE COURT: Yeah.  That sounds ideal to me.  And

4  again, I appreciate the parties' efforts in this respect.

5  You know, my approach has usually been, particularly with

6  matters like this, that I can grasp it much more efficiently

7  if I have the opportunity to read it.  My experience is often

8  that the cross examination is often tighter and crisper as

9  well if you're, if counsel has the opportunity in advance to

10 have the declaration.  And yeah, I think it's, rather than

11 just throwing the witness up to get cross examined, which is

12 something you're welcome to do, I don't have any issue with

13 taking a little bit of time to put your witness on,

14 essentially to make your fundamental point and introduce the

15 witness, and then tender them for cross.  And again, that

16 seems to me to be an efficient way to proceed, if it works

17 for everybody.  And again, I appreciate the cooperation

18 between the parties.

19       MR. TIMMONS: Okay.  Your Honor, at the moment, it

20 appears that there may only be one or two fact witnesses, if

21 any, and we would propose the same approach.  In other words,

22 we would assume that Your Honor would like us to submit a

23 declaration of the direct testimony and then we will turn the

24 witness over to cross examination.

25       THE COURT: And that certainly works for me.  And

1   again, that is a preference that I have, it's not a rule that

2   I impose.  And if there are circumstances where either one

3   side or the other, as it relates to a particular witness,

4   wants the opportunity to elicit, you know, some direct

5   testimony, or more than some, that's certainly something that

6   I'd be prepared to accommodate if you wish.  But I do, I

7   think as a practical matter, my preference would be that we

8   do it as you've described.  But again, I think I'm prepared

9   to proceed as the parties would wish.  And it does seem to me

10  that what you've described is both efficient and effective.

11          MR. TIMMONS: Okay.  And then in terms of timing we

12  were talking about, amongst ourselves, about submitting the

13  direct testimony by declaration to the Court on or around

14  April 17th, but we obviously defer to Your Honor if you'd like

15  to have it on another date.

16          THE COURT: No.  I think the 17th will be fine.  Does

17  that work for the defendants as well?

18          MR. CAULEY: Yes.  And just one point that we

19  discussed with the Trustee's counsel.  We have two potential

20  fact witnesses on our list.  At this time we have no reason

21  to call them, so therefore, we're not going to submit

22  declarations relating to them.  But it may come up that some

23  issue is presented in the Trustee's case, we may want to call

24  them for a discrete issue, and we just want to reserve the

25  right to do that.  And so we don't think a declaration is

1   necessary for them.  If we called them, it would only be for

2   five or ten minutes.

3           THE COURT: Mr. Timmons.

4           MR. TIMMONS: That's fine, Your Honor.

5   We'd just like, we'd like as much advance notice as possible,

6   obviously.

7           MR. CAULEY: Which we will do.

8           THE COURT: Yeah.  I appreciate that.  That sounds

9   fine with me.  The concern that I would always have in this

10  situation, and I think you've anticipated it, is somebody

11  getting either surprised or sandbagged, and it doesn't sound

12  - -

13          MR. CAULEY: Right.  This is not, this is not an

14  effort, Your Honor, to sandbag anybody.  We will let the know

15  as soon as we determine that we're going to call somebody.

16  But I just don't want to be precluded because we haven't

17  submitted a declaration by the 17th.

18          THE COURT: No.  Under the circumstances that you've

19  described I don't think that you'd be precluded.  And again,

20  it sounds like everybody is paddling in the same direction

21  that the process is going to be both fair and open.

22          MR. TIMMONS: The next item, Your Honor, that I'm

23  pleased to report is that the parties have reached agreement

24  on stipulations, at least informally at this point, regarding

25  a number of, the elimination of a number of claims and

1  defenses.  And we're also hoping that we can include a formal

2  stipulation of facts that are really not in dispute.  And

3  we'd like to try to submit those to Your Honor some time next

4  week as well in advance of the trial.  Then the only, there

5  was an open question, I guess, between the respective sides

6  about the submission of trial briefs.  I think, speaking on

7  behalf of the plaintiffs here, we'd like to submit some kind

8  of a very small or short brief to Your Honor that basically

9  provides the Court with a roadmap of what we intend to

10  establish at trial.  And I think the defendants had some

11  objection to that.  I'll let them speak.

12         MR. CAULEY: Well, I guess where we come out on it,

13  Your Honor, is whatever you prefer is what we'll, what we

14  will do.  We thought that some of these issues had already

15  been illuminated.  But maybe, if it's really an issue of what

16  works best for Your Honor.

17         THE COURT: Well, I have to confess that I have been

18  through, obviously, all of the materials for yesterday's

19  argument and the summary judgment and motions *in limine*, but

20  I received binders of material that I just took a look at

21  that seems like it's related to the trial, and, or was at

22  least not directly related to what I was dealing with

23  yesterday.  I don't really have a problem with the submission

24  of relatively short briefing.  Part of it is that I'm not

25  certain what I already have from you folks.  Can you give me

1  some context in that?  I'm not trying to make anybody do

2  anymore work, but I usually do find that, again, I hope it's

3  apparent, I do prepare for these and I read the pleadings in

4  advance.  So the more that I can have a handle on the

5  parties' positions in the lead up, the better off I am, and

6  the question, really, that I have is is the record

7  sufficiently developed as relating to, you know, sort of

8  legal argument and briefing that we don't need to guild the

9  lily.  I'll let Mr. Timmons first, and then I'll hear from

10  the Debtor, from the defendant.

11      MR. TIMMONS: Your Honor, from our perspective, I

12  would say, no.  The record is not sufficiently well

13  developed, at least in terms of the issues to be tried before

14  Your Honor, particularly in light of the ruling today.  We

15  have, I'm not exactly sure what you have, what you're

16  referring to that you received.  I know we've submitted all

17  of our pretrial disclosures, which include the things that

18  were listed earlier.  But we don't, we, among those items is

19  not a trial brief.  We have not yet submitted any sort of

20  trial brief that lays out for Your Honor the legal issues and

21  the facts as they relate, particularly now, to the issue of

22  solvency with respect to the distribution that was made in

23  2008.

24      MR. CAULEY: And Your Honor, this is Tom Cauley.

25  Upon reflection, given that, what's before Your Honor for

1    trial, I think maybe a pretrial brief would be helpful to

2    you.

3            THE COURT: I think that sounds fine.  It seems to

4    me that the 17th, probably, is an ambitious deadline.  We open

5    on the morning of the 22nd, right?

6            UNIDENTIFIED SPEAKER: Right.

7            THE COURT: What do you think you can do?  And since

8    I have the luxury of able and experienced litigators, you

9    don't need me to tell you that less is more.  What, you know,

10   if it's, this seems to me, in the lead up, that some

11   simultaneous briefing would be appropriate.  Do you guys

12   agree?

13           MR. CAULEY: I don't have a dispute with that.  This

14   is Tom Cauley.  I do not have a dispute with that.

15           MR. TIMMONS: Yes, Your Honor.  That would make a a

16   lot of sense from our perspective as well.

17           THE COURT: Okay.  And I think, then, the two things

18   I would suggest are one, it's got to be, you know, can we do

19   it by, you know, end of day, meaning midnight, on Thursday?

20   I'm not trying to - -

21           MR. CAULEY: No, that's fine.

22           THE COURT: Mr. Timmons does that work for you?

23           MR. TIMMONS: Yes, Your Honor.

24           THE COURT: And then I think what I'd like is, and

25   we don't need to answer it right now, perhaps you can confer,

1    but I think a page limitation between the parties might be

2    helpful.  First recognizing that I'm going to try to get

3    through these over the weekend with all the other materials.

4    But I will focus, frankly, first on these.  Do you think you

5    can lay it out for me in, say, 20 pages a pop?

6            MR. CAULEY: Works for defendants.

7            MR. TIMMONS: I think that, I think that works, Your

8    Honor, for the plaintiffs.

9            THE COURT: Okay.  And - -

10           MR. TIMMONS: Should be fine.

11           THE COURT: Yeah.  And again, the idea, I think, is

12   consistent with Mr. Timmons and now Mr. Cauley as well, the

13   idea of giving me a roadmap of the, both the legal issues and

14   where we go from here for purposes of trial.  I think that

15   that would be valuable for me, so I appreciate the effort and

16   I realize that it's a tight time line.  Okay.

17           MR. TIMMONS: Your Honor, with that, there are

18   really only the issues that remain which we discussed briefly

19   yesterday reflected in the other motions *in limine* that are

20   pending before the Court.  And as I mentioned, I believe,

21   yesterday, there are motions *in limine* that deal with,

22   essentially four topics.  Three that were brought by the

23   defendants and one that was brought by the plaintiffs.  With

24   respect to the three motions *in limine* that were brought by

25   the defendants, we've reached an agreement with the

1    defendants, we the plaintiffs have reached an agreement with

2    the defendants to, that I think either moots those motions,

3    for now at least, or would cause us to temporarily defer the

4    resolution of those motions until they become an issue.  And

5    basically what they relate to, the first motion the

6    defendants brought was related to excluding the examiner's

7    report, and we have no intention of offering the examiner's

8    report in its entirety into evidence.  We may seek to offer

9    an excerpt here and there into evidence, but we, at this

10   point in time, don't have any present intention of doing that

11   either and what we've done is we've agreed with the

12   defendants that if we do seek to offer into evidence, at any

13   point in time, a portion or excerpt of the examiner's report,

14   we will review that with the defendants ahead of time and if

15   they have an objection, we'll try to work that out.  If we

16   can't work that out, we'll bring it to Your Honor's attention

17   and seek a ruling from the Court.

18            THE COURT: I think that sounds fine.

19            MR. TIMMONS: And I think I should just clarify,

20   neither party is waiving their position, their respective

21   position with respect to the admissibility of any aspect of

22   the examiner's report.  But as I said, I don't think there's

23   a current dispute at this point in time that requires the

24   Court's involvement.

25            THE COURT: Okay.

1           MR. TIMMONS: The second motion that has been

2     resolved by agreement, at least for now, relates to the

3     defendants' motion to preclude improperly offering

4     inadmissible evidence via expert witnesses.  And as you heard

5     Mr. Cauley so eloquently say yesterday, he doesn't want the

6     plaintiff larding the record with inadmissible documents via

7     the experts.  We understand how the rules of evidence work

8     and in particular the rules of evidence relating to expert

9     testimony.  And we've assured the defendants that we intend

10    to abide by those rules and I don't think there is going to

11    be a dispute with respect to this particular motion.  But

12    again, to the extent something comes up at trial, and we need

13    the Court's involvement, we will let you know.

14          THE COURT: Okay.  That sounds fine, and we'll deal

15    with that at trial.  I think that sounds fine.

16          MR. TIMMONS: That then leaves two live motions *in*

17    *limine* for the Court to resolve.  One that is brought by both

18    the defendants, the Ritchie defendants as well as the

19    Cottonwood defendants that relates to the plaintiffs' use of

20    prior, a prior admission by the Cottonwood defendants in a

21    pleading.  And that's been fully briefed and we're happy to

22    submit that on the papers, if you'd like, Your Honor.  I

23    think it's pretty straightforward.

24          THE COURT: That's fine.  The matter is fully

25    briefed and I'm happy to take it on the papers.  I obviously

1   am not in a position to deal with that today, but I think we

2   may deal with that at the outset of the hearing on the 22nd?

3          MR. TIMMONS: That makes sense, Your Honor.

4          THE COURT: Mr. Cauley, does that work for you?

5          MR. CAULEY: That works.

6          THE COURT: Okay.

7          MR. TIMMONS: And the last remaining motion *in*

8   *limine* is a motion that we as the plaintiffs brought, Your

9   Honor, seeking to exclude portions of the expert testimony

10  offered by Mr. Lederman (phonetic), the solvency expert for

11  the defendants.  And this motion is a little more

12  substantive.  We, if Your Honor would like, we'd be happy to

13  defer the hearing on this matter as well to the morning of

14  the 22nd.  We think it probably would make sense to hold at

15  least a small hearing with respect to this motion, because

16  there are a number of issues that are raised, you know, that

17  the Court may have questions about.

18         THE COURT: Mr. Cauley, does that work for you to

19  deal with this - -

20         MR. CAULEY: That works for me too.

21         THE COURT: All right.

22         MR. CAULEY: That's fine.

23         THE COURT: That's fine.  I will track down and be

24  prepared for both of these motions *in limine*.  And I think,

25  again, as to the prior admission issue, the parties intend to

1   proceed on the papers, so I will either, if I have any

2   questions, we'll deal with them at the outset, otherwise I

3   would share with you my ruling at the outset of the hearing

4   on the 22nd.  As it relates to the prior admission.  And then

5   I would anticipate some argument with respect to the motion

6   *in limine* as to the defendants' insolvency expert.  And we'll

7   go from there.

8             MR. TIMMONS: Great.

9             THE COURT: Okay?  All right.  Anything else that we

10  need to cover this morning counsel?  All right.  I - -

11            MR. TIMMONS: Not from the plaintiffs, Your Honor.

12            THE COURT: All right.  Thanks very much, counsel.

13  I do appreciate your patience this morning.  We'll stand in

14  recess.

15            ALL: Thank you, Your Honor.

16        (Whereupon at 9:35 a.m. the hearing in this matter was

17  concluded for this date.)

18            I, Jennifer Ryan Enslen, approved transcriber for

19  the United States Courts, certify that the foregoing is a

20  correct transcript from the electronic sound recording of the

21  proceedings in the above entitled matter.

22

23   */s/Jennifer Ryan Enslen*                    April 15, 2013
     Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905